THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT PORTER, Also Known as REGINALD PRATHER, Appellant.

First Department, May 28, 1987

## APPEARANCES OF COUNSEL

*Alan Gadlin* of counsel *(Marc Frazier Scholl* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Robert Porter,* appellant *pro se.*

### OPINION OF THE COURT

SANDLER, J. P.

By permission of a Justice of this court in an order dated January 16, 1986, defendant appeals from an order of the Supreme Court denying, without a hearing, his *pro se* motion pursuant to CPL 440.10, 440.20 and 440.30 to vacate a judgment of conviction of that court convicting defendant of criminal possession of a controlled substance in the first degree.

The principal issue is raised by defendant's claim, now conceded to be factually accurate, that the District Attorney had failed to turn over to defendant a police report prepared several days after defendant's arrest, which stated that a quantity of cocaine, for possession of which defendant was tried and convicted, had been recovered from someone other than the defendant, someone arrested at the same time that defendant and a third person were arrested. A review of the trial testimony describing the events leading to the arrest of the defendant and two others is important to an understanding of the issue presented.

On February 17, 1981, New York City Police Department Detective Stephen Berk and New York State Investigator

Donald Klopfer, members of a New York Drug Enforcement Task Force engaged in narcotics surveillance, observed James Jackson, true name, Bert Baytops, shoot a man. Baytops and the defendant entered a car driven by Darrell Gilliens, which then drove away. The two officers pursued, stopped the car, and detained the men. Detective Berk testified to recovering a brown pouch from defendant's rear waist area, which contained numerous capsules and baggies of cocaine. A quantity of heroin was also recovered from the trunk of the car.

The three men were separately indicted. Baytops was convicted of assault in the second degree and criminal possession of a weapon in the third degree. Darrell Gilliens was acquitted after a trial charging him with criminal possession of a controlled substance in the second degree in connection with the drugs found in the trunk of the car that he was driving and hindering prosecution in the second degree based on his driving Jackson from the scene of the shooting. The Jackson and Gilliens cases were tried before the trial of the defendant that resulted in the conviction here sought to be vacated. All three indictments were originally assigned to an Assistant District Attorney who appears to have been the trial prosecutor in the Jackson and Gilliens trials. Prior to the defendant's trial, although after suppression hearings, his case was assigned to another Assistant District Attorney who tried the case.

As already noted, the defendant was convicted after trial of criminal possession of a controlled substance in the first degree, and, after an unsuccessful motion to set aside the verdict, was sentenced on September 24, 1982. On March 28, 1984, this court affirmed defendant's conviction without opinion (People v Porter, 99 AD2d 1032). On June 25, 1984, leave to appeal to the Court of Appeals was denied (62 NY2d 990).

In the defendant's pro se motion to vacate the conviction, in addition to varied confusing and meritless allegations that have no immediate relevance except to the extent to which they may have obscured an understanding of the principal issue raised, he alleged that after his conviction he had come into possession of a DEA form No. 6 dated February 23, 1981, signed by S/A Richard T. Klein, a member of the DEA Task Force, that asserted that the cocaine, for possession of which defendant was convicted, had been recovered from Baytops. In the District Attorney's responsive papers submitted by an Assistant District Attorney not involved in the trial, the report relied upon by the defendant was confused with a DEA

form No. 7, a laboratory report. It was correctly stated with regard to the latter report that it had been the subject of discussion on the record at the trial, and that it provided no basis for vacating the conviction. The opinion of the trial court denying defendant's motion, without a hearing, discloses a similar misunderstanding by the trial court with regard to the form upon which the defendant relied.

In responding to defendant's application for permission to appeal to this court from a denial, without a hearing, of his motion to vacate the conviction, the District Attorney's office acknowledged the error in the responsive papers submitted to the trial court, and admitted the existence of the DEA form No. 6 relied on by the defendant, that it had been at relevant times in the possession of the District Attorney's office in at least one of the several trial folders relating to the three arrests in the case, and that it had not been turned over to the defendant.

Addressing the issue presented in this case, it is clear that the police report in question stating that the cocaine for possession of which the defendant was convicted had been recovered from Baytops, was exculpatory material within the meaning of the familiar rule that imposes a duty on the People to disclose exculpatory material in their control. *(See, e.g., Brady v Maryland,* 373 US 83; *People v Brown,* 67 NY2d 555, 559; *People v Simmons,* 36 NY2d 126, 131.)

Although it is uncertain whether the existence of the report was known to the Assistant District Attorney who tried defendant, and his personal knowledge is in any event irrelevant, it is clear that the report in question was in at least one of the three file folders prepared in connection with the several arrests that took place, and that its existence was known, or should have been known, to the Assistant District Attorney originally assigned to all three cases, and who had tried two of the persons arrested. Except where exculpatory evidence is not disclosed pursuant to a specific, relevant request, a situation we do not believe to be here presented for reasons set forth later, the accepted test on a motion to vacate a conviction for failure to disclose exculpatory evidence is whether or not the evidence not disclosed "was material in the sense that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different' *(United States v Bagley,* 473 US 667, 682)" *(People v Chin,* 67 NY2d 22, 33).

On the face of it, the withheld report, prepared by a member of the DEA Task Force, other members of which arrested defendant, asserting a fact directly contrary to the theory of the prosecution, meets the test of materiality. However, the District Attorney argues persuasively that the statement in the report of Special Agent Klein relied on by the defendant represents Klein's misreading of a factual recital appearing in an earlier report dated February 19, 1981, by Investigator Klopfer, one of the two officers who effected the three arrests. A textual comparison of the two police reports provides apparently strong support for this contention.

As noted above, Klopfer and Berk were the two members of the task force who stopped the vehicle leaving the scene of the shooting and arrested the three occupants. In a report signed by him dated February 19, 1981, following an introductory synopsis, Klopfer set forth in the first three paragraphs the details concerning the observation of the shooting, the pursuit and stopping of the car, and the arrest of the three occupants. In paragraph 3, the following is set forth: "Upon searching the defendants, P.O. Berk removed Exhibit A, 2 .38 Calibre Police Positive revolver from the belt of Baytops and Exhibit #1, 380.0 gross grams, of alleged cocaine from the person of Porter. Exhibit C, a brown vinyl zippered shoulder bag, containing Exhibit #2, 188.6 gross grams of alleged heroin, and Exhibit B, consisting of two (2) rubber stamps 'Second Time Around', stamp pad and a bottle of black ink, was removed by Inv. Klopfer from the trunk of the Oldsmobile." The report goes on to describe the transporting of the defendants to the 28th Precinct, their questioning, and subsequent processing and arraignment.

The Klein report relied on by the defendant opens in paragraph 1 with the following: "Reference is made to an arrest Report dated 2/19/81, by Inv. Donald Klopfer relative to the arrest of three defendants involved in a shooting incident outside the Ebony Hotel, 142 West 112th Street, New York City." The second paragraph appears to be a summary of the observations set forth in the Klopfer report with regard to the shooting, the pursuit of the vehicle, and the arrest of the three defendants. Paragraph 3, containing the statement relied on by the defendant says: "P.O. Berk seized Exhibit A, a .38 Calibre Police Positive revolver from defendant Bert Baytops aka James Jackson and also seized from Baytops was Exhibit #1, 380.0 grams gross of alleged cocaine." Paragraph 4 followed: "Inv. Klopfer seized Exhibit C, a brown vinyl

zippered bag that contained Exhibit #2, 188.6 grams gross of alleged heroin and Exhibit B, two rubber stamps from the trunk of the Oldsmobile." The Klein report then goes on to detail activity with regard to the vehicle that was seized.

When the Klein report is compared with the earlier Klopfer report, particularly in light of the introductory reference to the Klopfer report, it has the appearance in the sections pertinent to the issue presented of an effort to set forth background facts derived from the Klopfer report as a preliminary to a recital of events relevant to the seized automobile. On the other hand, the Klopfer report refers to the arrival, prior to the removal of the quantity of cocaine from the defendant, of other members of the surveillance team, without identifying specifically those who arrived. The possibility cannot be excluded that Agent Klein was present at the time the three defendants were searched and that, therefore, his report may have been based on a personal observation. Nor, of course, can the possibility be excluded on the basis of the documentary records that Klein may have obtained the information set forth in his report from a member of the team who was present at the time of the relevant events.

█ If, in fact, the sentence relied on by the defendant as exculpatory represented a misreading of the earlier report, it is doubtful that the withholding of the report could reasonably be deemed material under the test referred to above. The issue, of course, cannot be definitively determined without a hearing.

We have also considered whether or not the failure of the District Attorney to turn over the Klein report was a failure to respond to a specific relevant request, in which event a different standard than that described above would appear to apply. The present state of the authorities with regard to a failure to turn over exculpatory material in response to a specific, relevant request may be briefly stated.

In *United States v Agurs* (427 US 97, 106), the Supreme Court said that when a prosecutor fails to disclose exculpatory material in response to "a specific and relevant request, the failure to make any response is seldom, if ever, excusable." In *People v Cwikla* (46 NY2d 434), quoting this language from *Agurs,* the Court of Appeals adopted that principle. However, in *United States v Bagley* (473 US 667, 87 L Ed 2d 481), departing from the position taken in *Agurs,* the Supreme Court concluded *(supra,* 473 US, at 682-683) that a single test

for materiality was sufficiently flexible "to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

We are unable to state with certainty at this time whether or not the Court of Appeals in a case squarely presenting the issue would adhere to the *Agurs* test or would follow the revised approach adopted by the Supreme Court in *Bagley (supra)*. We note, however, that in *People v Brown* (67 NY2d 555, *supra)*, the Court of Appeals repeated (at 559) the *Agurs* test as it had been adopted in *People v Cwikla (supra)* in an opinion written after *Bagley,* although the court did not refer to the Supreme Court's opinion in *Bagley,* and the issue raised in *Brown* by the motion to vacate was found to be meritless.

In light of this reaffirmation of the *Agurs* test in *Brown (supra),* however, we think it reasonable to assume that the Court of Appeals will continue to take the position that the failure to respond to a specific, relevant request is seldom, if ever, excusable. Accordingly, it is necessary to determine whether or not such a specific, relevant request was here made for the withheld report. The circumstances giving rise to the question are unusual and present a question not entirely free from doubt.

In a colloquy occurring during defendant's motion to suppress, the Assistant District Attorney then handling the matter, the one originally assigned to all three defendants, said, clearly referring to the drugs removed from the trunk of the car, that "none of the drugs" were recovered from this defendant. At the beginning of the trial the defendant, acting *pro se,* purporting to believe that this statement amounted to an admission by the prosecutor that the drugs for whose possession he was on trial had not been recovered from him, repeatedly requested whatever documents or records there were that gave rise to the District Attorney's supposed comment. The assistant assigned to the case responded that the defendant was misinterpreting that which was said, and that there was, in fact, no evidence in the possession of the District Attorney that formed the basis for the statement, which did not have the meaning attributed to it by the defendant.

There can be no doubt that the defendant's application was based on a total misinterpretation of the District Attorney's statement. Considered in context, and in light of the reality that the defendant had been indicted on the basis of Grand Jury testimony by Berk that he had recovered the cocaine from the defendant, and that this fact had been set forth in the complaint filed at the time of the defendant's arraignment, it is indisputably clear that the reference seized upon by the defendant was to the narcotics found in the trunk of the car. In short, there did not exist, as the District Attorney said, any record or document that had given rise to the supposed comment. On the other hand, as is now clear, there was in existence a record, which, on the face of it, stated that the cocaine for which the defendant was indicted, had been recovered from one of his companions.

■ Although we acknowledge that a plausible argument could be made for another view, we are persuaded that the described circumstances do not invoke the separate test of materiality set forth in *Agurs (supra)* that applies where a prosecutor withholds exculpatory material in response to a specific, relevant request.

An additional comment seems to us appropriate. As the District Attorney has conceded on this appeal, the Klein report should have been turned over to the defense. As to the Assistant District Attorney who tried defendant's case, it is unclear whether or not he ever was aware of the Klein report. As to the District Attorney originally assigned to the defendant and the two others arrested with him, and who apparently conducted the Jackson and Gilliens trials, it is conceded that the Klein report was in at least one of the trial folders, and, therefore, it may reasonably be assumed that she knew, or should have known, the contents of the Klein report. It is of course possible that the assistant, in reading that report, may not have appreciated the difference between it and the Klopfer report with regard to who possessed the cocaine that was recovered, in which event the failure to turn over the Klein report would have been a regrettable, but inadvertent error. If, however, the Assistant District Attorney had failed to turn over to the defendant the Klein report on the basis of a judgment that it represented a misreading of the Klopfer report, whether that conclusion was based on a textual study or on the basis of a factual inquiry, the failure to turn over the report would have represented, in our view, a disturbing error in judgment.

Accordingly, the order of the Supreme Court, New York County (Livingston L. Wingate, J.), dated June 20, 1985, which denied defendant's motion pursuant to CPL 440.10, 440.20 and 440.30 to vacate a judgment of that court, rendered, after a jury trial, on September 23, 1982, convicting defendant of criminal possession of a controlled substance in the first degree and sentencing him to an indeterminate prison term of 15 years to life, to be served consecutive to any sentence outstanding against him in New Jersey, should be reversed, on the law, and the motion to vacate judgment remanded for a hearing in accordance with this opinion.

MILONAS, J. (dissenting in part). The majority have held that the failure of the People to produce the Klein report did not constitute a refusal to respond to a specific and relevant request by defendant for exculpatory evidence, and, therefore, reversal of his conviction is not mandated absent a finding of materiality of the document in question. However, in my opinion, the majority's conclusion involves a factual determination which is not warranted without a hearing even being held on that matter. Although this case has been remanded for a hearing on the issue of materiality, the court has inexplicably declined to permit the Trial Judge to consider as well whether the prosecution's failure to turn over the Klein report was in response to a specific and relevant request. In that connection, it is inappropriate for the majority to remand for a hearing with respect to one disputed issue of fact, but not with regard to the other. The defendant should at least be accorded an opportunity to demonstrate his contention that the People wrongfully failed to disclose exculpatory material. Certainly, this court should not be making such a fact finding in the first instance. Consequently, both issues of fact should properly be decided by the Trial Judge.

KASSAL and WALLACH, JJ., concur with SANDLER, J. P.; MILONAS and ROSENBERGER, JJ., dissent in part in an opinion by MILONAS, J.

Order, Supreme Court, New York County, entered on or about June 20, 1985, reversed, on the law, and the motion to vacate judgment remanded for a hearing in accordance with the opinion of this court herein.